Mark Ahlemeyer, OSB No. 095997
Assistant Federal Public Defender
Email: mark_ahlemeyer@fd.org
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>JAMIE FAYE COBAT,<br><br>      Defendant. | Case No. 3:16-cr-00187-MO-1<br><br>DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE |

The defendant, Jamie Faye Cobat, through counsel, respectfully requests that this Court vacate her convictions and dismiss the indictment with prejudice based on the government's violation of its constitutional obligation to produce exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

## BACKGROUND

On April 26, 2016, Ms. Cobat was indicted on three counts of Theft of Government Funds in violation of 18 U.S.C. § 641. CR 1. The counts alleged that Ms. Cobat had stolen or converted

United States-funded benefits in the following amounts: $18,197 from Supplemental Security Income (SSI), $2,845 from the Temporary Assistance to Needy Families program (TANF), and $5,825 from the Supplemental Nutrition Assistance Program (SNAP). *Id.*

On October 5, 2016, the government filed a superseding indictment charging Ms. Cobat with engaging in an overall scheme to defraud the government in violation of 18 U.S.C. § 1343 (Count 1). CR 16. The three substantive counts of theft were also charged in the new indictment (Count 2 – SSI; Count 3 – TANF; Count 4 – SNAP). *Id.*

The case proceeded to a jury trial and, on April 6, 2017, Ms. Cobat was convicted of all charges. Sentencing was ultimately set for January 5, 2018. CR 121.

On December 28, 2017, defendant filed a motion for a new trial based, in part, on an allegation that the government violated its constitutional duty under *Brady v. Maryland* to produce exculpatory evidence showing that Ms. Cobat did not receive the TANF funds she was convicted of having converted. CR 125. Defendant also filed a motion to strike sentencing, arguing that the new trial motion should be decided before proceeding with sentencing. CR 123.

The government responded by denying that a *Brady* violation occurred and it encouraged the Court to proceed with sentencing as scheduled. CR 130. At the hearing on the date set for sentencing, the Court granted the defense motion to strike the sentencing and permitted additional discovery in the case relevant to the *Brady* claim.

On February 20, 2018, the government reversed its position and moved to vacate the conviction on Count 3. CR 137. The defense understands that motion to be a concession that a *Brady* violation did occur in this case. The Court granted that motion on February 26, 2018. CR 139. Further arguments on defendant's Motion For A New Trial are scheduled for March 22, 2018. CR 136.

Page 2   DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

**ARGUMENT**

I. **The Government's *Brady* Obligation Is Fundamental To The Fair Administration Of Justice And Failures To Fulfill That Duty Should Be Strictly Enforced.**

It has long been understood that there is a "special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)). In *Brady v. Maryland* and its progeny, the Supreme Court established that a fundamental aspect of this "special role" is the prosecutor's duty to provide a criminal defendant with relevant and helpful evidence. Withholding of such material violates the government's critical responsibility "to provide every criminal defendant with a fair and impartial trial." *Phillips v. Ornoski*, 673 F.3d 1168, 1188 (9th Cir. 2012). And it is not merely a defendant who suffers the consequences when the government falls short of its duties; all of society, and our reliance on the fairness of the justice system, suffer the consequences. Indeed, "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady*, 373 U.S. at 87; *see also Ornoski*, 673 F.3d at 1181-82 ("These duties provide fundamental protections that are vital to the successful operation of an adversarial system of criminal justice; they embody the state's obligation not to obtain the accused's conviction at all costs, but rather to do justice by furthering the truth-finding function of the court and jury.").

The government's *Brady* obligations are not self-executing. They require specific prosecution teams to faithfully adhere to their duties and be scrupulous in ensuring that a fair trial occurs. Unfortunately, as numerous courts and judges have observed, the government has too often failed in living up to its unique duty of ensuring that justice is done. In 2013, the then-Chief Judge of the Ninth Circuit decried "an epidemic of *Brady* violations abroad in the land" and argued

that "[o]nly judges can put a stop to it." *United States v. Olsen*, 737 F.3d 625, 626 (9th Cir. 2013) (Kozinski, C.J., dissenting from the denial of en banc review). Per the Chief Judge:

> I wish I could say that the prosecutor's unprofessionalism here is the exception, that his propensity for shortcuts and indifference to his ethical and legal responsibilities is a rare blemish and source of embarrassment to an otherwise diligent and scrupulous corps of attorneys staffing prosecutors' offices across the country. But it wouldn't be true. *Brady* violations have reached epidemic proportions in recent years, and the federal and state reporters bear testament to this unsettling trend.

*Id.* at 631-32 (listing twenty-nine cases).

The District of Oregon is by no means immune to such problems. *See, e.g.*, *United States v. Price*, 566 F.3d 900 (9th Cir. 2009) (new trial granted after a conviction in the District of Oregon where the government failed to produce impeachment evidence of a key witness); *United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013) (new trial granted after a conviction in the District of Oregon where the government failed to produce evidence that it had paid a key fact witness). In 2014, Oregon District Judge Ancer Haggerty invoked the court's supervisory powers to issue an "Amended Supervisory Opinion" addressing "pervasive discovery problems" in a case that had been settled by a plea agreement.[1] *United States v. Pedersen*, 2014 WL 3871197, *1-3 (D. Or. Aug. 6, 2014). Quoting Chief Judge Kozinski, Judge Haggerty stated that "the court does not believe that it can, in good conscience, allow the government's conduct to pass without comment":

> When a public official behaves with such casual disregard for his constitutional obligations and the rights of the accused, it erodes the public's trust in our justice system, and chips away at the foundational premises of the rule of law. When such transgressions are acknowledged yet forgiven by the courts, we endorse and invite their repetition.

*Id.* at *2 (quoting *Olsen*, 737 F.3d at 632).

---

[1] In addition to the discovery violations, *Pedersen* involved the government infringing on the attorney-client privilege.

Judge Haggerty's Supervisory Opinion was "intended as a preventative rather than a punitive measure" and he expressed his "hope[] that similar conduct will not recur." *Id.* at *33 & n.1. He echoed Chief Judge Kozinski's belief that courts must strictly enforce violations to ensure the fundamental fairness of our justice system: "Only through the stringent safeguarding of a criminal defendant's rights can the court ensure that justice is done." *Id.* at *33.

Stringently enforcing *Brady* violations when they come to light is critical given that, "[d]ue to the nature of a *Brady* violation, it's highly unlikely wrongdoing will ever come to light in the first place." *Olsen*, 737 F.3d at 630. This is so because the defense is often unaware of the *Brady* material, and "all the incentives prosecutors confront encourage them not to discover or disclose exculpatory evidence." *Id.* Indeed, even where a defendant learns of suppressed *Brady* evidence and overcomes the "materiality" standard, the ordinary remedy of a new trial essentially gives the government "a do-over, making it no worse off than if it had disclosed the evidence in the first place." *Id.* Thus, it is questionable whether there is any real deterrent in simply ordering a new trial. In any event, as discussed below, the proper remedy in this case is to vacate the remaining convictions and dismiss the indictment with prejudice.

## II. The Court Should Exercise Its Supervisory Powers And Dismiss The Indictment With Prejudice Based On The Government's Violation Of *Brady*.

A district court may dismiss an indictment with prejudice based on its inherent "supervisory powers" where doing so would: (1) implement a remedy for the violation of a recognized statutory or constitutional right; (2) preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or (3) deter future illegal conduct. *United States v. Chapman*, 524 F.3d 1073, 1084-85 (9th Cir. 2008).

In the context of *Brady* violations, all three considerations are implicated and courts have exercised their supervisory powers to dismiss indictments with prejudice. *See, e.g.*, *Chapman*, 524 F.3d at 1090; *United States v. Aguilar*, 831 F. Supp. 2d 1180 (C.D. Cal. 2011); *United States v. Fitzgerald*, 615 F.Supp.2d 1156 (S.D. Cal. 2009). However, where a *Brady* violation occurs based on accidental conduct or mere negligence on the part of the government, the granting of a new trial is the ordinary remedy. Because a court must be mindful of encroaching on the "prosecutor's charging authority," dismissing a case with prejudice is appropriate only "in cases of flagrant prosecutorial misconduct." *Chapman*, 524 F.3d at 1085 (quoting *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991)). The "flagrant misbehavior" standard is satisfied where there is a "reckless disregard" of a prosecutor's constitutional obligations. *Fitzgerald*, 615 F.Supp.2d at 1159 (quoting *Chapman*, 524 F.3d at 1085). When considering whether to dismiss a case with prejudice, a court should also evaluate the government's conduct in causing the violation and its "willingness to own up to it." *Chapman*, 524 F.3d at 1087.

Finally, before ordering an indictment dismissed with prejudice, a court must be satisfied that a defendant has been substantially prejudiced and that a lesser remedial action would be inadequate. *Id.* In this case, all the standards set forth in *Chapman* are met.

### A. The Government's Conduct In This Case Evinces A Reckless Disregard For Its Constitutional Obligations.

The government had numerous opportunities to fulfill its constitutional obligation to see that justice was done and own up to its error, but it was seemingly more focused on convicting and sentencing Ms. Cobat than it was on fulfilling its duty. Before, during, and after trial, the government was put on notice of the potential problems with respect to Count 3. Before and during the trial, the government apparently took no steps to investigate whether those concerns were valid.

After trial, the government did some investigation but then concluded—and strenuously argued to this Court—that its follow-up revealed no problems with the conviction. Finally, after being forced to support its position with evidence, the government conceded it was wrong and admitted that Ms. Cobat should not have been convicted on Count 3. The timeline of the government's response to Ms. Cobat's claim that she believed she was receiving pre-SSI benefits and not TANF demonstrates that the government recklessly disregarded its constitutional duty to find and disclose exculpatory evidence.

### 1. First And Second Opportunity To Correct Itself—Prior To And During Trial.

In discovery, the government provided Ms. Cobat with the Oregon Department of Human Services (DHS) TRACS narratives, which document interactions between the agency and its clients. The last entry in the TRACS narratives provided to the defense was dated October 19, 2016. Disc. at 1589. Newly provided discovery shows that there were two additional TRACS entries between that date and the date of trial, April 4, 2017. Both of those entries occurred on January 18, 2017. And in both, Ms. Cobat clearly states to DHS representatives that she did not believe she received TANF after March of 2012. Exhibit A ("She states she did not receive TANF after March 2012"). A follow-up email between DHS employees also notes that Ms. Cobat had requested her agency records so that she could "prove she last received TANF in March 2012." Exhibit B.

As noted in defendant's Motion For A New Trial, Ms. Cobat testified at trial that she believed she did not receive any TANF benefits after April of 2012. CR 125 at 5; tr. at 328. Instead, she understood she was receiving what was essentially an advanced loan on her own disability claim. *Id.* The government falsely argued to the jury that Ms. Cobat had suddenly concocted a new defense: "She never denied receiving TANF until she got up on the stand

Page 7   DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

yesterday . . . ." Tr. at 416.  Moreover, the government argued that the case "come[s] down to Ms. Cobat's credibility" and that she should not be believed because her testimony regarding TANF was inconsistent with the evidence:

> Now, yesterday Ms. Cobat did testify that she believed she was not receiving TANF as of April 12th, 2012, and therefore that she did not receive those benefits, but the records in evidence show that those TANF benefits did not stop until May of 2013, and that between August of 2012 and May of 2013, $2,845 in TANF benefits were paid to her.

*Id.* at 383-84.

The evidence that the government was referring to was presumably the testimony of the case agent and other DHS employees.  This was the same evidence the government offered to the Court in successfully defeating a mid-trial motion for judgment of acquittal.  Of course, as we now know, that evidence was wrong.  But it does not appear that the government made any efforts to confirm or deny the truth despite several pretrial warnings and Ms. Cobat's own testimony at trial.

### 2.  *Third Opportunity To Correct Itself—Prior To Defense Motion For A New Trial.*

The government had another opportunity to correct course in December of 2017.  At that time, undersigned counsel contacted the government to express concerns that, based on a review of the undisclosed deposit records, it appeared that Ms. Cobat did not receive the TANF benefits she was convicted of receiving.  As the government would later explain in its Response to the new trial motion:

> [I]n response to defense counsel's query about the SFPSSI benefits, the government obtained an explanation from DHS and provided it to defense counsel prior to the filing of defendant's motion for new trial. The DHS overpayment writer explained that defendant was not eligible for anything under the TANF program—including TANF and Pre-SSI—due to defendant's child not being in the home. (See Declaration of DHS employee attached as Exhibit 3 for further explanation of the TANF program benefits.)

> Thus, *defendant's continued argument that the SFPSSI documents would have supported defendant's argument that she was not receiving TANF benefits is without merit.* She was receiving a TANF benefit and the[re] was no error.

CR 130 at 3 (emphasis added). Apparently, either the query or the explanation was insufficient as the government continued to assert that Ms. Cobat's conviction was valid and that the parties should proceed to sentencing on the then-set date.

### 3. Fourth Opportunity To Correct Itself—After The Defense Motion For A New Trial.

Because undersigned counsel believed the government's response to the pre-SSI query did not fully address the problems raised, counsel filed a motion to strike the sentencing and a motion for a new trial based, in part, on the government's failure to produce pre-SSI related documents and DHS's deposit records. In the motion, defendant argued that at the very least, "the undisclosed material is fatal to the conviction on Count 3" because: (1) it appeared Ms. Cobat did not receive TANF funds; (2) if she did, it was less than $1,000; (3) even if pre-SSI could be considered TANF, there was no evidence that she knew about pre-SSI reporting requirements; and (4) there was no evidence that pre-SSI was federally funded, and the undisclosed documents suggested otherwise. CR 125 at 9.

Without apparently doing the investigation it has now done, the government responded forcefully. It asserted that defendant's "arguments are without merit," that "reliance on [the new] exhibits is misplaced," and that the defendant "misstates the law." CR 130 at 1-2. The government claimed the new evidence "would have added nothing of substance" to the trial and was neither "material [n]or exculpatory." *Id.* at 5. According to the government, "the Pre-SSI documents and the SNAP/TANF EBT log provide nothing that contradicts the DHS investigator or caseworker's testimony." *Id.* at 6. And finally, as it had before the jury, the government claimed that Ms. Cobat

Page 9   DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

"did not deny receiving TANF benefits until her testimony on direct." *Id.* at 7. As is now apparent, every one of those statements is wrong.

### 4. Fifth Opportunity—After This Court Orders Further Inquiry.

Fortunately, this Court did not merely accept the government invitation to summarily deny the defense motion and proceed with sentencing. Instead, the Court permitted additional discovery and a future hearing where further evidence could be adduced. It is that decision that finally spurred the government to fully investigate what Ms. Cobat had first told DHS representatives almost a year earlier.

The government's failure to investigate whether it had withheld exculpatory evidence, whether its witnesses had testified falsely, and whether Ms. Cobat had been wrongfully convicted supports dismissing the indictment. *See Chapman*, 524 F.3d at 1085 ("We note as particularly relevant the fact that the government received several indications, both before and during trial, that there were problems with its discovery production and yet it did nothing to ensure it had provided full disclosure until the trial court insisted it produce verification of such after numerous complaints from the defense."). The government did not "own up to it," *id.* at 1087, and instead, aggressively argued to this Court that there was "no error" and that sentencing should proceed as scheduled. CR 130 at 3. Apart from the fact that the government must now concede that it was wrong and that a *Brady* violation occurred, the Court should be extremely concerned that the government was adamant in its position despite having failed to do the necessary investigation to actually know whether its position was correct. *See Pederson*, 2014 WL 3871197 at *24 ("The government should not have made arguments relying on the production of discovery from a position of such ignorance.") (citing *Chapman*, 524 F.3d at 1085). The government has the unique and critical duty to ensure that justice is done and that trials (and convictions) are fundamentally

fair.  The government's conduct in this case, especially with respect to its Response to defendant's new trial motion, evinces a reckless disregard for its constitutional duties and warrants this Court dismissing the indictment under its inherent supervisory powers.

### B. Dismissal Is Warranted Because Ms. Cobat Suffered Substantial Prejudice And There Is No Adequate Lesser Remedy Available.

Before dismissing an indictment with prejudice, the Court must be satisfied that a defendant suffered substantial prejudice and that no lesser remedial action is adequate.  *Chapman*, 524 F.3d at 1087.  In assessing the propriety of dismissing an indictment, a court should consider the government's misconduct, its willingness to "own up to it," and whether the government would gain an advantage in a retrial.  *Id.* at 1087-88.

Here, Ms. Cobat was clearly prejudiced because she was convicted of a crime that she could not have lawfully been convicted of.  But the granting of a new trial cannot cure the extent of the prejudice in this case and is not an adequate remedy.  First, a new trial would inherently "increase the emotional and financial burden imposed on [a] defendant," which should not be permitted when the government's own misconduct necessitates another trial.  *Chapman*, 524 F.3d at 1081.  And second, the government would gain a major advantage by having "an unfair opportunity to tailor its case based on what it learned the first time around."  *Id.*

Indeed, this is not a case where the government would simply get a "do-over" and would be "no worse off than if it had disclosed the evidence in the first place."  *Olsen*, 737 F.3d at 630.  If an effective defense attorney possessed the withheld material at the first trial, the defense could have significantly bolstered its theory of the case and completely destroyed the credibility of the investigation and the case agent, while bolstering Ms. Cobat's testimony and credibility at the same time.  As the district court in *Chapman* noted:

> If this case were to be retried, the government and its witness will not make that mistake again, and that's the advantage that the government gains by its actions here. It gets a chance to try out its case[,] identify[ ] any problem area[s], and then correct those problems in a retrial, and that's an advantage the government should not be permitted to enjoy.

*Chapman*, 524 F.3d at 1087 (alterations in original). Here, the defense should have had the opportunity to cross-examine witnesses and attack the government's case using the highly exculpatory evidence that was suppressed. A new trial is an inadequate remedy because the government would have an opportunity to cure the now-apparent problems with its case and it will undoubtedly be prepared to handle defense inquiries into those matters. As a result, the defense would never have a fair opportunity to try the case on the terms it was brought by the government in the first place.

Moreover, it is also now impossible to assess whether the defense would have made certain decisions if it had the *Brady* material at its disposal and had used it effectively. For example, Ms. Cobat chose to testify in the case, which may never have happened if the government's case-in-chief had properly been impeached. Such critical tactical decisions cannot now be undone, and the government should not benefit by having forced those decisions to be made under circumstances where it had changed the dynamic of trial by unconstitutionally withholding information from the defense. For these reasons, a new trial is not an adequate lesser remedy to dismissal.

### C. Dismissal Of The Indictment In This Case Is Warranted To Preserve Judicial Integrity And To Deter Future Constitutional Violations.

This case represents a fundamental failure of the criminal justice system and the fairness and objectivity that should attend to any prosecution by the United States government. At every step of the way, constitutional protections that should have avoided this wrongful conviction failed

because of the government's own conduct. The Grand Jury did not protect Ms. Cobat because it was given only the incorrect testimony of DHS investigator and case agent Karlene Austin. That same false testimony convinced this Court to deny a motion for judgment of acquittal and convinced the petit jury to wrongfully convict on a count that never should have been before it. The Sixth Amendment right to effective counsel was stymied because trial counsel never received basic discovery such as deposit records that would have demonstrated the problems in the government's case. Confidence in our system of justice and confidence in the government's special duty to find and disclose exculpatory information will be eroded unless courts hold the government accountable. *See Olsen*, 737 F.3d at 626 ("Only judges can put a stop to [*Brady* violations]").

The violation of due process in this case came to light despite the government's repeated efforts to deny that any such problem occurred. In assessing the appropriate remedy, this Court should be mindful that the government and the investigative agencies do not have clean hands. Moreover, this is not a case where dismissing the indictment would cause collateral harm to a victim or potentially put the community at risk by releasing a violent offender. This is a benefits theft case where the alleged victims are the same government agencies that failed to properly investigate and charge the case, which ultimately led to numerous due process violations. Those agencies can recoup any wrongly issued benefits through an administrative process and will not suffer financial harm if this Court dismisses the indictment. To ensure that these agencies and the prosecutors who rely on their investigations do not trample on the integrity of the judicial system or the constitutional rights of defendants, a strong remedy is required. Only a full dismissal of the case will adequately deter such problems in the future.

## CONCLUSION

For the reasons stated above, Ms. Cobat respectfully requests that this Court vacate her remaining convictions and order the indictment dismissed with prejudice.

Respectfully submitted this 9th day of March, 2018.

                                                      */s/ Mark Ahlemeyer*
                                                     Mark Ahlemeyer
                                                     Attorney for Defendant