BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**HELEN L. COOPER, OSB #871957**
helen.cooper@usdoj.gov
**GAVIN W. BRUCE, OSB # 113384**
gavin.bruce@usdoj.gov
Assistant United States Attorneys
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-2708
Telephone:  (541) 465-6771
Facsimile:   (541) 465-6917
Attorneys for the United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:16-CR-00187-MO |
| v. | GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S |
| JAMIE FAYE COBAT, | MOTION FOR NEW TRIAL AND MOTION TO DISMISS |
| Defendant. | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, through Amy E. Potter, Helen L. Cooper and Gavin W. Bruce, Assistant United States Attorneys, hereby submits this response to defendant's motion for a new trial and motion to dismiss.  Defendant's motions should be denied

## INTRODUCTION

A jury found defendant Jamie Cobat lied about where her son was living, where she lived, and with whom she lived.  These lies were material because Cobat received Supplemental Security Income (SSI) benefits; food stamps or Supplemental Nutrition Assistance Program (SNAP) benefits; and Temporary Assistance for Needy Families (TANF) benefits premised on

her false information.  The lies about with whom she was living affected her eligibility for benefits.  After her conviction and in response to Cobat's claim that she did not actually receive TANF benefits, the government investigated her claim.  Although the government confirmed that Cobat received TANF benefits, it also discovered that the specific TANF payments she received were funded by state funds.  Absent a federal hook, the government promptly disclosed its discovery and moved to vacate the verdict on the TANF-related count (count three).

Nothing about this post-trial discovery undermines the jury's finding that Cobat lied in several material respects to receive welfare benefits.  Consequently, her bid for a new trial should be denied.  Her alternative demand for dismissal should be rejected because there was nothing flagrant or outrageous about the government's handling of this case.  Her ineffective assistance of counsel claims are premature.  Her motions should be denied.

## BACKGROUND

Defendant Cobat was charged with one count of wire fraud and three counts of theft of government funds based on her receipt of public assistance.  (ECF No. 16).   The core issue at trial was whether Cobat knowingly collected public assistance she was not entitled to receive because she lied about whom she was living with.  There were three types of benefits at issue: SSI benefits, which were based on her son's medical condition and defendant's financial need; SNAP benefits; and TANF benefits.  Her right to receive each type of benefit, and therefore her guilt as to each count, was linked by one common and critical question: who was living with Cobat?   After hearing all the evidence, including the testimony of Cobat, the jury returned a guilty verdict on all four counts in the superseding indictment. (ECF Nos. 72, 75).

After trial, Cobat fired her lawyer, and the court appointed new counsel. In December 2017, defense counsel began asking for additional information related to the TANF benefits. Defense counsel believed that the benefit Cobat received was not TANF but, rather, pre-SSI, and that Cobat was eligible to receive those benefits regardless of whether her son lived in the home. The defense theory appeared to be based on EBT logs that counsel or Cobat obtained directly from the Oregon Department of Human Services (DHS), which were not provided in discovery. (Exhibit A to Defense Motion for New Trial (hereinafter "MNT Ex."))

The government followed up with investigators and received confirmation that all of the benefits alleged to be TANF were in fact TANF. (Exhibit 2 to Government's Response to Motion for New Trial (hereinafter "Gov't. Resp. Ex."); *see also* Gov't. Resp. Ex. 3, ¶ 4). The government also confirmed that these TANF-related benefits required that Cobat have a minor in the home in order to receive them. (Gov't. Resp. Ex. 3, ¶ 4).

Cobat filed a motion for a new trial and a hearing was held. (ECF Nos. 125, 132). After the hearing, the Court ordered additional discovery and briefing. During this process, the government determined that it had requested Cobat's SNAP spending history in January 2017. (Declaration of AUSA Helen Cooper at ¶ 7 (hereinafter Decl. H. Cooper)).[1] In response to AUSA Cooper's request, the government determined that DHS had provided the EBT logs via secure email. (*Id*. at ¶ 8). The government did not process them for discovery. (*Id.* at ¶ 10). While the government received the records, it has no record of downloading them or saving them

---

[1] AUSA Gavin Bruce, who served as AUSA Cooper's trial partner for this case, did not join the case until February 23, 2017. (ECF No. 32). He did not participate in the grand jury or discovery process for this case. Decl. H. Cooper ¶ 4. At trial, he did not handle any of the SSA or DHS witnesses.

for purposes of discovery.  (*Id.*)  When the government discovered this mistake, it turned over the email to defense counsel showing that the EBT logs had been sent to the government on January 10, 2017.  (*Id.*at ¶ 20; *see also* MNT Ex. E).

The government also turned over additional discovery including updated file narratives from DHS showing that Cobat contacted DHS on January 18, 2017, less than three months before trial, to follow up on a request for records she made in October 2016.  (Exhibit 1 to Defense Motion to Dismiss (hereinafter "MTD Ex.")).  According to the January 2017 records, Cobat claimed that she was not receiving TANF, and confirmed that she had received the documents she needed.  (*Id.*)

During this post-trial process, the government discovered, for the first time, that the TANF/Pre-SSI program was not funded by federal funds.  Because these benefits were not funded federally, the government recognized that it could not prove that Cobat had received over $1000 of federally-funded TANF benefits.  As such, the government moved to vacate count three, which this Court granted.  (ECF Nos. 137, 139).

## ARGUMENT

### A.  A New Trial is Not Warranted in this Case

A new trial is not warranted in this case because the jury's verdict rested on overwhelming evidence that Cobat lied about several critical aspects of her living conditions that affected her eligibility for SSI and SNAP benefits.  Nothing in the newly disclosed evidence relates to or undermines the verdict on those counts.

///

///

*1. Legal Background*

Federal Rule of Criminal Procedure 33 governs a motion for a new trial. "A defendant who seeks a new trial based on new or newly discovered evidence must show that (1) the evidence is newly discovered; (2) the failure to discover the evidence is not attributable to a lack of diligence by the defendant; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the evidence indicates that a new trial would probably result in an acquittal." *United States v. Waggoner*, 339 F.3d 915, 919 (9th Cir. 2003) (citations omitted). When a new trial is based on an allegation that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), defendant bears the burden of proving that there has been a *Brady* violation that warrants relief. *Strickler v. Greene*, 527 U.S. 263, 289-90 (1999). To meet this burden, Cobat must show that: (1) the undisclosed evidence was favorable to her; (2) the evidence was suppressed by the prosecution—either willfully or inadvertently; and (3) prejudice ensued. *Id.* at 281-82.

*Brady* only applies to material information. *Brady*, 373 at 87. "Evidence is 'material' . . . when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-470 (2009) (citation omitted). A "reasonable probability" of a different result is one in which the suppressed evidence "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotations and citation omitted); s*ee also Turner v. United States*, 137 S. Ct. 1885, 1893 (2017).

*Brady* is not implicated when the information is available to both parties or when it is publically available. If the defendant is aware of the "probability" that certain evidence exists

and fails to request it through discovery, she cannot later claim a *Brady* violation. *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006). Nor can a defendant allege a *Brady* violation when she makes statements and similarly fails to inform counsel or request them. *Rhoades v. Henry*, 638 F.3d 1027, 1037-38 (9th Cir. 2011).

In determining whether the defendant was prejudiced, courts should evaluate the effect of the undisclosed evidence not in isolation, but in light of the rest of the trial record. *United States v. Agurs*, 427 U.S. 97, 112 (1976); *United States v. Collins*, 551 F.3d 914, 923 (9th Cir. 2009). Even if there is a *Brady* violation as to a single count, the law recognizes that counts may be severable and the non-affected counts may stand alone. *United States v. Johnson*, 592 F.3d 164, 171 (D.C. Cir. 2010). "For each count, then, the court must evaluate each of the three components of a Brady violation." *Id.* When the evidence as to the remaining counts is "so extensive" and "sufficiently strong," reversal is not warranted. *See United States v. Lazarenko*, 564 F.3d 1026, 1044-45 (9th Cir. 2009) (denying new trial on all counts based on prejudicial misjoinder because the evidence was sufficient on the remaining counts). To prevail on the remaining counts, a defendant must show that the evidence would have "buttress[ed] his version of events" as to those counts. *See United States v. Lloyd*, 71 F.3d 408, 412-13 (D.C. Cir. 1995) (rejecting defense argument that *Brady* violation corrupted his conviction on every count).

> 2. There Was No Brady Violation Because the Records were Known and Available to the Defense and Were Not Exculpatory.

Failure to provide Cobat's EBT logs, which show the deposits and spending of her SNAP and TANF benefits, and the updated TRACS narratives, which show she contacted DHS in

January 2017,[2] does not constitute a *Brady* violation in this case.  Cobat knew of the existence of the records and did not request them from the prosecution.  *See* Decl. H. Cooper at ¶ 12.  She also had the ability to obtain them herself.  The records show Cobat contacted DHS for records in 2016, and received records in January 2017 from DHS that she said were sufficient.  MTD Ex. 1.  Despite this, she testified that she never received records showing she received TANF.  Trial Transcript at 329 (hereinafter "Tr.").  The government cannot be expected to constantly request agency records post-indictment to discern if a defendant is making statements to the agency that support her defense.  Nor does the government commit a *Brady* violation by failing to obtain records when the defendant knows about them and could obtain or request them, but declines to do so.  *Raley*, 470 F.3d at 804.

Nor are any of these records exculpatory.  The records establish that Cobat was receiving a TANF benefit until May 2013.  She applied for the benefits, which were essentially a loan on her SSI, on a form with "Temporary Assistance for Needy Families" in the header.  MNT Ex C.  The form also notes it is her "family's benefit," suggesting that the benefits were not for individual adults.  Gov't Resp. Ex.3, ¶ 3-4; Tr. at 173.  The EBT logs show that when she started receiving this TANF benefit in 2012, it came from an account listed as TANFSFP2.  MNT Ex. A.  The EBT logs simply show what account her TANF benefits were coming from.

---

[2] The records up until October 2016 were provided and were an exhibit at trial.  *See* Government Trial Exhibit 31 (hereinafter "Tr. Ex.").  The updated records contain only two additional entries, both entered on January 18, 2017.  MTD Ex. 1.

Likewise, an entry regarding a single statement by Cobat to DHS in January 2017 does not change what the rest of the TRACS show—that Cobat was receiving TANF long after she claimed she stopped receiving it in April 2012. The TRACS show the following:

- In May 2012, Cobat she submitted an application for TANF. Tr. Ex. 31, p. 108.

- In October 2012, Cobat called and asked why she had not received more SNAP and TANF. *Id.* at 115.

- In December 2012, her records reflect she was receiving a TANF grant. *Id.* at 116.

- In May 2013, Cobat re-applied for cash, medical and SNAP benefits and continued to report that her son was living with her. The TANF was discontinued when DHS determined that her son was not "deprived" of his father due to seeing him after school. *Id.* at 121.

It is true that further questions from defense counsel about the type of TANF benefits Cobat was receiving post-trial prompted the government to ask DHS who funded the specific pre-SSI/TANF benefits. Decl. H. Cooper at ¶¶ 21-22. Although it is possible that the EBT logs and the TRACS narrative from January 2017 may have prompted this inquiry earlier, any prejudice has been corrected through the government's voluntary motion to vacate the conviction as to the TANF benefits (count 3).

    3. *Cobat Cannot Establish Prejudice as to The Remaining Counts*

Cobat seizes upon the government's mistake regarding the source of the TANF funds in an attempt to discredit the entire trial and the jury's verdict, but the factual record cannot support this overreach. Throughout the trial, the jury was presented with exhibits and testimony that highlighted Cobat's many lies to SSA and DHS regarding who she was living with and where she was living. These lies yielded benefits she was not entitled to receive. There was not just

one single statement or omission, but a pattern of calculated lies and inconsistent statements, which resulted in Cobat receiving benefits she was not entitled to receive. And her response to these arguments was simply to lay blame on everyone else for her own lies.

As the representative payee for her son's SSI benefits, Cobat submitted annual reports to SSA in 2012, 2013 and 2014, on which she wrote that her son lived with her in Lebanon. Tr. Exs. 9, 10, 11. Yet, her son testified—and school records confirmed—that, during that time, he was living with his father and attending school in Albany. Tr. at 87-89; Tr. Ex 15. Similarly, in 2013, she told DHS that she and her son lived in Lebanon and that her "friend" Fox was living with them. She then told DHS (but not SSA) in September 2013 that she had moved to Redmond. Tr. Ex. 24. However, on the stand she testified that she had not moved to Redmond, as she lived in Lebanon the entire time. Tr. at 351, 353. This was despite testimony that another couple rented the home in Lebanon during much of this time. Tr. at 138-40.

Cobat took her story a step further during trial when she asserted that because she had legal custody of her son, she believed she could report he lived with her even when he was living with his father. Tr. at 322-23, 345-46. This was despite being put on notice by DHS in April 2012, that her benefits would be affected if her son lived with his father. Tr. at 149-50; Tr. Ex. 31, p. 105. She also claimed she spent all of the benefits on her son as she had certified. When confronted with SSI records showing how she had spent her son's benefits, she claimed the trips to the liquor store were to buy him soda and the trips to Victoria's Secret were to buy him cologne. Tr. at 361.

Perhaps recognizing the overwhelming evidence against her, Cobat resorts to claiming that the records cast "serious doubt on the testimony of multiple government witnesses." This

argument has no merit. As to the government witnesses, only two witnesses testified regarding TANF benefits. Rebecca Hernandez's testimony was focused on the time period before the indictment and involved the traditional TANF benefits. Tr. at 148-49. She was never asked if Cobat received TANF benefits from September 2012 until May 2013, what type of TANF it was, the source of those funds, or if Cobat had ever said that she believed she was not receiving TANF after April 2012.

The DHS investigator, Karlene Austin, was asked about the benefits during the relevant time period and testified, correctly, that Cobat was receiving TANF benefits and that an adult is only eligible for TANF if there is a minor in the home. Tr. at 173, 177-78, 189. She was never asked if the benefits from September 2012-May 2013 were federally-funded. In fact, she clearly testified that there were two sources of funding for TANF: state and federal.[3] Tr. at 172. She was also never asked to describe if the benefits were pre-SSI benefits. This is not because Cobat was unaware of this argument—her counsel asked Cobat about it during her direct testimony. Tr. at 329-31. Similarly, Austin was never asked if Cobat contacted DHS to tell them she was not receiving TANF benefits.

Nothing about the TANF funding source undermines the jury's finding that she lied about where her son was living, how she spent the money, who she lived with, and where they lived.[4]

---

[3] Austin was the only DHS witness who testified in grand jury. In grand jury, she also testified that TANF was funded by state and federal funds. She was not asked what amount of Cobat's TANF benefit was funded by the federal government.

[4] To be convicted, Cobat was not required to know that the money belonged to the government or the specific name of the benefit, only that she was receiving a benefit she was not entitled to receive. *See United States v. Howey*, 427 F.2d 1017, 1018 (9th Cir. 1970) (holding

It was these repeated lies that resulted in her convictions. Her lies are just as apparent today as they were before the government discovered that her ill-gotten TANF benefits were state-funded. Cobat's convictions for receiving SSI and SNAP she was not entitled to receive "stand on their own." *Lazarenko*, 564 F.3d at 1047. Cobat's motion for a new trial as to the remaining counts must be denied.

### B. Dismissal Of The Indictment Is Not Warranted

Dismissal of the indictment is also not warranted because Cobat has failed to demonstrate that the prosecution acted in bad faith. To warrant dismissal of the indictment, Cobat must not only demonstrate a *Brady* violation occurred, she must show there was "flagrant misbehavior" by the prosecution, demonstrating a "reckless disregard" of its constitutional obligations. *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008). A court may dismiss an indictment under its supervisory powers only in extremely limited circumstances: (1) in cases involving "flagrant prosecutorial misconduct," and (2) when the defendant suffers "substantial prejudice," and, significantly, (3) where "no lesser remedial action is available." *Id.* at 1086-87. To determine if dismissal is warranted, a court should consider "the government's willfulness in committing the misconduct and its willingness to own up to it." *United States v. Kojayan,* 8 F.3d 1315, 1318 (9th Cir. 1993).

Even if Cobat could establish that she has suffered some prejudice as a result of the failure to discover the source of the TANF funding, she cannot demonstrate any "flagrant

---

that government is not required to prove that defendant knew the stolen funds were federal funds). The source of the funding is a jurisdictional requirement. *Id.*

prosecutorial misconduct" necessitating dismissal of the entire indictment. *Chapman*, 524 F.3d at 1085 (quotations and citation omitted). What happened in this case was a mistake—the government failed to clarify if over $1000 of the $2,845 in TANF funds Cobat received during the time period alleged in the indictment were federally-funded. The government charged the case based on the general understanding that TANF is a federally-authorized and funded program that provides cash assistance to certain low-income families. While the government was aware that some portion of TANF is funded by the state, it operated under the general assumption that TANF is predominately funded by the federal government. Decl. H. Cooper at ¶¶ 3, 6.

After defense counsel said that he believed the funds were not federally-funded, the government promptly reached out to DHS to verify the funding. *Id* at ¶ 22. DHS stated that pre-SSI TANF is initially funded by the state, and later reimbursed with federal funds when the recipient is awarded SSI. *Id*. The government followed up to determine why DHS showed that Cobat had received notice of overpayment of TANF if the payments were funded by the state. *Id*. DHS responded that when writing the overpayment, they do not determine if "the case is federally funded, state funded or a mix. We don't have any systematic way to capture funding types, only program codes." *Id*. The government then determined that it should move to vacate count three, and after receiving the proper approvals, alerted defense counsel, and filed the motion to vacate. *Id.* at ¶ 23.

The government did not, as Cobat alleges, repeatedly ignore issues with the TANF count during the case. The heart of this allegation is Cobat's claim she was not receiving TANF and therefore, any claim during trial that she received TANF was false. But, as the government has

demonstrated, she was, in fact, receiving a type of TANF that she was not eligible to receive. *See* Gov't. Resp. Ex. 3 at ¶ 4.

Cobat also seizes on a single comment during rebuttal that the first time she claimed she was not receiving TANF was at trial. The government's single statement in rebuttal was true based on the evidence it had before it. It had no knowledge of Cobat's January 2017 conversation with DHS. *See* Decl. H. Cooper at ¶ 11. Cobat knew, however, that she had contacted DHS, and was free to testify to that effect or to request that the government check if there were records of that contact. She did neither.

The government made a mistake about a jurisdictional issue: who funded the TANF benefits?[5] As soon as the government was aware of this issue, it promptly investigated and learned of the error. *Id.* at ¶¶ 21-22. This error did not result in any prejudice, though, because her conviction as to the TANF benefits has been vacated. ECF No. 139. Cobat was not convicted of SSI and SNAP fraud because of some misconduct by the government. She was convicted based on the multitude of false and inconsistent statements, many of which she made in writing. Her claim of confusion and that "everyone else is wrong" was rejected by the jury. Her motion to dismiss the indictment should be denied.

### C. Defendant's Ineffective Assistant Of Counsel Claims Are Not Ripe

The government has previously addressed defendant's claims that she should receive a new trial because her counsel was ineffective. The government will not repeat all those arguments here, but does incorporate its prior response. Generally, the Ninth Circuit has

---

[5] Cobat did receive some federally-funded TANF benefits during the indictment period. *See* MNT Ex. A.

"'rejected the use of a Rule 33 motion for new trial based on 'newly discovered evidence' involving the ineffective assistance of counsel." *United States v. Allen*, 153 F.3d 1037, 1045 (9th Cir. 2003) (*citing United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). For that reason, these claims should be rejected.

Even if the Court were to entertain defendant's claims at this juncture, she cannot show that her trial counsel's representation fell below an objective standard of reasonableness and that she was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 690, 694 (1984). Given the overwhelming evidence against her, even if counsel was deficient, she cannot establish a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 694.

## CONCLUSION

The government did not commit a *Brady* violation and voluntarily moved to vacate count three when it realized it could not prove an element of the offense. No other remedy is warranted. Defendant's motions for a new trial and to dismiss the indictment should be denied.

Respectfully submitted this 26th day of March 2018.

BILLY J. WILLIAMS
United States Attorney


s/ *Helen L. Cooper*
HELEN L. COOPER
Assistant United States Attorney

s/ *Gavin W. Bruce*
GAVIN W. BRUCE
Assistant United States Attorney

s/ *Amy E. Potter*
AMY E. POTTER
Assistant United States Attorney