BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**HELEN L. COOPER, OSB #871957**
helen.cooper@usdoj.gov
**GAVIN W. BRUCE, OSB # 113384**
gavin.bruce@usdoj.gov
Assistant United States Attorneys
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-2708
Telephone:  (541) 465-6771
Facsimile:   (541) 465-6917
Attorneys for the United States

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:16-CR-00187-MO |
| v. | DECLARATION OF AUSA HELEN COOPER IN SUPPORT OF GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL AND MOTION TO DISMISS |
| **JAMIE FAYE COBAT,** | |
| Defendant. | |

Pursuant to 28 U.S.C. § 1746, I, Helen L. Cooper, hereby declare that:

1.    I am an Assistant United States Attorney (AUSA) and currently serve as the supervisor for the Eugene and Medford Offices of the Oregon U.S. Attorney's Office.  Prior to serving as an AUSA, I was employed by the Social Security Administration (SSA) and served as a Special Assistant United States Attorney (SAUSA) prosecuting fraud and abuse of federally funded benefit programs.

2.      As a SAUSA, I received extensive training regarding different federal benefit programs including benefits administered by the SSA, Medicare and Medicaid, Supplemental Nutrition Assistance Program (SNAP) or food stamps, and Temporary Assistance for Needy Families (TANF).

3.      With respect to TANF, I am aware that TANF is a federal assistance program that provides cash benefits to needy families. States receive a grant of federal funds to implement the state TANF program. In Oregon, the Department of Human Services (DHS) implements TANF. The majority of TANF benefits are federally funded, but a small portion are funded with state funds.

4.      I served as lead counsel in *United States v. Cobat*, 3:16-cr-00187-MO. During trial, AUSA Gavin Bruce served as co-counsel. He joined the case in February 2017, after the case was filed.

5.      I reviewed the evidence and sought the indictment against Jamie Cobat for defrauding both the SSA and DHS based on her receipt of Supplemental Security Income (SSI), SNAP and TANF benefits she was not entitled to receive based on her misrepresentations about who she was living with.

6.      I was aware, through my training and experience, that the majority of TANF benefits are funded by the federal government and that there must be a minor child in the home in order to receive TANF. Based on this, I included the TANF benefits in the indictment. I sought an indictment for a felony charge of 18 U.S.C. § 641, theft of government funds. A felony violation of 18 U.S.C. § 641, requires a loss of more than $1,000. Based on the

investigation, I knew that Cobat had received $2,845 in TANF benefits from September 2012 to May 2013. I did not clarify whether more than $1,000 of those benefits were federally funded.

7.Trial in *United States v. Cobat* was set for April 2017. In January 2017, while preparing for trial, I requested the log that would show how Cobat spent her SNAP benefits. This email request is attached hereto as Exhibit A. I did not request records that would show how Cobat's TANF benefits were spent, nor was I aware that both SNAP and TANF spending would necessarily be shown on the same log.

8.DHS responded to my request on January 10, 2017, by sending me Cobat's Electronic Benefits Transfer (EBT) log via a secure email.

9.When I receive an email from DHS that is sent via "secure" email, I am required to enter a password to enter into the secure email account before I can see the content of the message or determine whether any documents are attached. Whether the message is opened or not, within a certain time period the content of the message and any attachments are no longer available for review. It was, and is, my common practice when I receive a secure email to open the email and download any attachments into my electronic case file. If the attachment should be provided in discovery, I provide it to my legal assistant so that it can be processed for discovery.

10.In this case, I have reviewed my electronic case files and did not locate Cobat's EBT log. I have reviewed discovery and know that the EBT log was not provided in discovery. At this time, I have no recollection of receiving or reviewing the Cobat EBT log.

11.Prior to January 2017, for purposes of discovery, I requested and received up-to-date TRACS narratives. These TRACS narratives covered the time period up to October 2016,

which went beyond the July 2016 fraud time period alleged in the indictment. I did not request updated TRACS narratives again prior to the April 2017 trial. At the time of the trial, I was not aware that Cobat had contacted DHS in January 2017, claiming that she had not received TANF benefits.

12. In preparation for trial, I consulted with defense counsel about a variety of issues including discovery. At no time did defense counsel request Cobat's EBT log, any additional TANF records, or the updated TRACS narratives. Defense counsel never indicated that Cobat had contacted DHS for proof of receiving TANF in January 2017.

13. The first time I learned that Cobat believed she had not received TANF benefits after April 2012, was when she testified at trial.

14. After trial, new defense counsel, Mark Ahlemeyer, was appointed to represent Cobat. In December 2017, he contacted me to discuss the case and asked several questions. With respect to the TANF count, he asked if we had records that showed "the actual payments on the TANF count," as he did not see that information in the discovery.

15. I responded that there were no other payment records for the TANF other than what was in the discovery provided. We agreed to set up a time to talk the following week.

16. On December 14, 2017, AUSA Bruce and I had a telephone conference with defense counsel and his investigators. During this call, counsel mentioned that if the benefits Cobat received were pre-SSI, perhaps they were benefits she was entitled to receive based on her own disability, and whether a child was in the home or not was irrelevant.

17. Later that day, counsel sent me an email stating that he was "very concerned that Ms. Cobat was convicted of receiving TANF benefits that she did not actually receive." He

stated that he had Cobat's EBT log that showed both SNAP and TANF benefits. He discussed the different codes on the EBT log and stated that "the TANF loss amount appears to me to be less than half of what the indictment charged." This email is attached hereto as Exhibit B.

18.     Based on this email. I followed up with DHS to confirm that the $2,845 TANF loss charged in the indictment was TANF or TANF-related benefits. DHS overpayment writer Tana Hunsucker responded to me and confirmed that the $2,845 was all TANF and TANF-related benefits that Ms. Cobat was not entitled to receive because the child was not in the home. This email is attached hereto as Exhibit C. I sent this information to counsel. This email is attached hereto as Exhibit D.

19.     On December 28, 2017, defendant filed a motion for a new trial, arguing, among other things, that the EBT log indicated defendant did not receive TANF. The government filed a written response that included a declaration from Tana Hunsucker that clarified that Cobat had received TANF benefits. (ECF No. 130).

20.     Sometime prior to January 23, 2018, I recalled that I had previously requested the EBT log for Cobat's SNAP benefits. During a telephone conference with defense counsel and AUSA Bruce, I advised defense counsel that I recalled requesting the log but was unable to determine if I had actually received it as I was unable to locate it in my files. A subsequent search of DHS email determined that DHS had in fact sent the EBT log to me on January 10, 2017.

21.     On January 23, 2018, I had a conference call with defense. During this conference call, I realized for the first time that defense was questioning whether the pre-SSI—whether TANF or not—was federally-funded.

22. On January 23, 2018, I sent an email to DHS Fraud Investigator Michael Glenn and asked him if Pre-SSI was a federally-funded benefit. He sent me an excerpt from a "Program Overview" of Pre-SSI that said it is funded by "General Fund dollars," and then reimbursed with SSI when the person is awarded SSI. I asked him if "general fund" was state or federal. Glenn responded that the "general fund" was state money. In response to my questions regarding why the overpayment was written as TANF if it was not federally-funded, DHS responded that they do not determine if "the case is federally funded, state funded or a mix. We don't have any systematic way to capture funding types, only program codes." This email exchange is attached hereto as Exhibit E.

23. After learning of this issue, I sought approval to dismiss the TANF count (count three). I notified counsel that we were likely to dismiss count three. On February 20, 2018, I filed a motion to vacate the verdict as to count three. (ECF No. 72).

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 26th day of March 2018.

s/ *Helen L. Cooper*
HELEN L. COOPER
Assistant United States Attorney